lp

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS


**PATRICK C. LYNN,**

                              **Plaintiff,**

        **v.**                                        **Case No.  11-3073-JAR**

**RAY ROBERTS, et al.,**

                        **Defendants.**

## <u>MEMORANDUM AND ORDER</u>

This civil Complaint was filed pro se by plaintiff Patrick Lynn while he was confined at

the El Dorado Correctional Facility, El Dorado, Kansas ("EDCF").  Plaintiff names 114

defendants, counting the "Does 1-50."  He claims that he is subjected to numerous

unconstitutional conditions and generally alleges that he is a "provably innocent" man that was

railroaded.[1]  The matter before the Court is plaintiff's Motion for Leave to Proceed in Forma

Pauperis (Doc. 2).

Mr. Lynn was long ago designated a "three strikes" litigant pursuant to 28 U.S.C. §

1915(g).[2]  Section 1915(g) provides:

> In no event shall a prisoner bring a civil action or appeal a
> judgment in a civil action or proceeding under this section if the
> prisoner has, on 3 or more prior occasions, while incarcerated or
> detained in any facility, brought an action or appeal in a court that

---

[1]In prior cases, Mr. Lynn has sought to challenge his state criminal conviction along with his conditions of confinement.  He was advised that he cannot challenge his conviction in a civil rights complaint and that since he has already had a first federal habeas corpus petition considered and denied, he may not proceed on habeas claims in this court without obtaining preauthorization from the Tenth Circuit Court of Appeals to file a successive habeas application.

[2]*See Lynn v. Cleaver*, 12 Fed. App'x 676, 678 (10th Cir. 2001) (unpublished).

1

is frivolous, malicious, or fails to state a claim upon which relief
may be granted, unless the prisoner is under imminent danger of
serious physical injury.

Mr. Lynn is therefore required to "pay up front for the privilege of filing . . . any additional civil actions."[3]  "[P]roceeding in forma pauperis in a civil case is a privilege, not a right— fundamental or otherwise," and "deterring frivolous and malicious lawsuits, and thereby preserving scarce resources, is a legitimate" governmental interest.[4]  After applying a classic statutory interpretation of § 1915(g), the Third Circuit articulated that through the "three strikes" rule Congress had declared in "stark terms"

that the I.F.P. privilege will not be available to prisoners who have,
on three occasions, abused the system by filing frivolous or
malicious lawsuits or appeals, no matter how meritorious
subsequent claims may be.[5]

An inmate barred by § 1915(g) from proceeding in forma pauperis ("IFP") may nevertheless proceed under the fee provisions of 28 U.S.C. § 1914 applicable to everyone else.[6]

## I.      LEGAL STANDARDS

"There is only one exception to the prepayment requirement in § 1915(g)," and it applies to a prisoner who "is under imminent danger of serious physical injury."[7]  The burden is upon

[3]*Id.*; *Jennings v. Natrona Cnty. Det. Ctr.*, 175 F.3d 775, 778 (10th Cir. 1999).

[4]*White v. Colorado,* 157 F.3d 1226, 1233-34 (10th Cir. 1998).

[5]*Abdul-Akbar v. McKelvie*, 239 F.3d 307, 314 (3d Cir.), *cert. denied*, 533 U.S. 953 (2001).

[6]§ 1915(g) does not prevent a prisoner with three strikes from filing a civil action.  He or she is simply unable to enjoy the benefits of proceeding IFP and instead must pay the full fee at the time of filing.  Plaintiff offers to make partial payments from his inmate account to satisfy the fee.  However, he is not entitled to pay by installments unless his motion to proceed IFP is granted.  It is only when delaying the litigation until the fee is paid in full threatens "imminent danger of serious physical injury" that the litigant is granted IFP status in spite of his past abuse and allowed to pay his filing fee obligations in installments.  *See Merriweather v. Reynolds*, 586 F. Supp. 2d 548 (D.S.C. 2008).

[7]§ 1915(g); *Hafed v. Fed. Bureau of Prisons*, 635 F.3d 1172, 1179 (10th Cir. 2011) (citing *Kinnell v. Graves*, 265 F.3d 1125, 1127 (10th Cir. 2001)); *Smith v. Veterans Admin.*, 636 F.3d 1306, 1309 (10th Cir. 2011).

2

the prisoner plaintiff to allege sufficient facts to establish the exception and his resulting

entitlement to IFP status.[8]

Courts begin applying the exception in § 1915(g) by searching the complaint filed by a

three-striker for allegations of imminent danger of serious physical injury.[9]  They have generally

continued to expend their limited time parsing the abusive litigant's entire complaint in an effort

to winnow out any possible statement of fact that might support the exception.  The complaint

contains all the claims and allegations that the plaintiff hopes to present and is seldom limited to

those believed to involve imminent physical danger.[10]  The Tenth Circuit has recently specified

that a plaintiff "should make his allegations of imminent danger in his motion for leave to

proceed IFP."[11]  The three-strikes bar is a provision within the statute governing IFP

proceedings.  The main purposes of the three-strikes provision, to avoid issuance of summons in

meritless lawsuits and to minimize the drain on public funds and judicial resources caused by

frequent filers of frivolous lawsuits, are best effectuated by requiring that the showing of

"imminent danger of serious physical injury" be made in connection with the IFP motion.

Requiring a three-striker to make his showing of imminent danger in a separate document

---

[8]*See e.g. White v. Gregory*, 87 F.3d 429, 430 (10th Cir. 1996); *Robert v. Walls*, No. 11-234, 2011 WL 1599652, at *1 (W.D. Pa. Mar. 14, 2011) (holding it is plaintiff's burden to prove entitlement to IFP status); *Nelson v. Nesmith*, No. 9:06-CV-1177, 2008 WL 3836387, at *5 (N.D.N.Y. Aug. 13, 2008) (explaining that to claim the exception, the inmate must "show that the danger faced rises to the level of exposure to a 'serious physical injury.").

[9]*Ibrahim v. District of Columbia*, 463 F.3d 3, 6 (D.C. Cir. 2006) ("In determining whether he qualifies [for the 'imminent danger' exception], we look to the complaint . . . ."); *Brown v. Johnson*, 387 F.3d 1344, 1350 (11th Cir. 2004) ("[T]he issue [under § 1915(g)] is whether his complaint, as a whole, alleges imminent danger of serious physical injury."); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) ("Before denying leave to proceed IFP, courts must review a frequent filer's well-pled allegations to ensure that the prisoner is not in imminent danger.").

[10]A vexatious litigant often files a morass of claims against numerous defendants in a repetitive, lengthy complaint and from his extensive litigation practice has learned to alter allegations previously pointed out as deficient by the court, if only by adding "formulaic" statements.

[11]*Hafed*, 635 F.3d at 1180 (citing *White v. Colorado,* 157 F.3d 1226, 1231 (10th Cir. 1998)).

3

submitted in support of his IFP motion better preserves scarce judicial resources and comports

with the intent of the three-strikes bar.  At the same time, it synchronizes the legal principle that

a plaintiff is not required upon filing his IFP motion to prove the claims in his complaint with the

provisions of § 1915, which require the plaintiff to prove his entitlement to proceed IFP.[12]

Thus, to effectuate the purposes of § 1915(g), this court holds that the showing that a

prisoner is "under imminent danger of serious physical injury" is to be made in an affidavit

attached to the prisoner's Motion to Proceed IFP, and that the affidavit is to contain only those

facts relevant to make this showing.  The decision as to whether or not the inmate is entitled to

proceed IFP should be made prior to determination of any other motions in the case and prior to

screening the complaint.

The "imminent danger" exception has a temporal limitation.  The exception is construed

narrowly and available only "for genuine emergencies," where "time is pressing" and "a threat . .

. is real and proximate."[13]  "Congress included an exception to the 'three strikes' rule for those

cases in which it appears that judicial action is needed as soon as possible to prevent serious

physical injuries from occurring in the meantime."[14]  As the Third Circuit explained, the "limited

exception" created by Congress was "aimed at preventing future harms" which are "about to

occur at any moment or that are impending."[15]  Accordingly, its availability has been limited to

---

[12]Under § 1915(a)(1), a plaintiff is required to submit an "affidavit that includes a statement" of all his assets
and that he is unable to pay the fees.  He is also required, under § 1915(a)(2), to submit certified information detailing
the deposits and balances in his inmate account over the six-month period immediately preceding the filing of his
complaint.

[13]*Lewis v. Sullivan*, 279 F.3d 526, 531 (7th Cir. 2002).

[14]*Abdul-Akbar v. McKelvie*, 239 F.3d 307, 319 (3d Cir.), *cert. denied*, 533 U.S. 953 (2001).

[15]*Id.* at 315.

conditions a prisoner faced at the time the complaint was filed, not at some earlier or later time.[16]

In order to meet the exception, the three-strikes plaintiff is required to provide "specific credible allegations" of imminent physical danger such as "ongoing serious physical injury" or "a pattern of misconduct evidencing the likelihood of imminent serious physical injury."[17] General allegations not grounded in specific facts indicating that serious physical injury is imminent are not sufficient.[18] "The exception focuses on the risk that the conduct complained of threatens continuing or future injury, not on whether the inmate deserves a remedy for past misconduct."[19] Furthermore, allegations of past misconduct of defendants and even of past injury to plaintiff are insufficient to allow a three-striker to proceed IFP.[20] Consequently, a claim by a prisoner that he faced past imminent danger is an insufficient basis to allow him to proceed pursuant to the exception.[21] When the reason that the plaintiff speculates he is in danger of

---

[16]*Hafed*, 635 F.3d at 1179-80 ("Every circuit to have decided the issue so far has concluded that the statute's use of the present tense shows that a prisoner must have alleged an imminent danger at the time he filed his complaint."); *see also Andrews v. Cervantes*, 493 F.3d 1047, 1053 (9th Cir. 2007); *Abdul-Akbar*, 239 F.3d at 313 (adopting the construction of § 1915(g) by the Fifth, Eighth, and Eleventh Circuit Courts of Appeals, that a prisoner may invoke the "imminent danger" exception "only to seek relief from a danger which is 'imminent' at the time the complaint is filed."); *see Burgess v. Conway*, 631 F. Supp. 2d 280, 283 (W.D.N.Y. 2009).

[17]*Smith*, 636 F.3d at 1309; *Hafed*, 635 F.3d at 1179-80; *Strope v. Cummings*, ___F.3d___, 2011 WL 3455827, *1 (10th Cir. Aug. 9, 2011); *Fuller v. Wilcox*, 288 Fed. App'x 509, 511 (10th Cir. 2008) (unpublished) (citing *Martin v. Shelton*, 319 F.3d 1048, 1050 (8th Cir. 2003) (explaining that to fall within the exception, the plaintiff must make "specific fact allegations of ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury.")).

[18]*Fuller*, 288 Fed. App'x at 510 (citing *Ciarpaglini*, 352 F.3d at 330); *Martin*, 319 F.3d at 1050.

[19]*Martin*, 319 F.3d at 1050; *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002) (citation omitted) (finding that by using the term "imminent," Congress "indicated that it wanted to include a safety valve for the 'three strikes' rule to prevent impending harms, not those harms that had already occurred.").

[20]*Abdul-Akbar*, 239 F.3d at 311.

[21]*Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999) (holding that exception not triggered where threat of assault by other prisoners ceased to exist when plaintiff was placed in administrative confinement prior to filing his complaint).

5

future harm is a pattern of past harassment, he still must show that danger was imminent at the time he filed his complaint.[22]  The Complaint in this case was filed on April 4, 2011.

What factual allegations and proof, if any, the prisoner must provide in order to qualify under the exception is not as well-settled.  In earlier unpublished opinions, courts including the Tenth Circuit fell back on the general pleading standard of Fed. R. Civ. P. 8, and held that allegations of imminent danger of serious physical injury in the complaint must be accepted as true.[23]  In a recent published opinion, the Tenth Circuit held that "even if (plaintiff) points to other papers to establish his allegations of imminent harm," he should make "specific reference" to the defendants, the harms, and the occasions."[24]

Without a doubt, vague and conclusory allegations are insufficient.[25]  Obviously, allegations regarding conditions that involve no danger of physical injury, such as denial of court access or First Amendment claims of interference with mail and telephone privileges or religious rights, are not sufficient to establish the exception.[26]  Allegations that correctional officers have verbally threatened to assault an inmate, without more, are also clearly insufficient to establish

---

[22]*Davis v. Rice*, 299 Fed. App'x 834, 835 (10th Cir. 2008) (citing *Fuller*, 288 Fed. App'x at 511); *see also Taylor v. Walker*, No. 07-706-MJR, 2007 WL 4150345, at *1 (S.D. Ill. Nov. 20, 2007) ("While Plaintiff has alleged that he suffers from continuing harassment and retaliation at the hands of prison staff, these acts of harassment and retaliation do not show that at the time Plaintiff filed his complaint that Plaintiff is under imminent danger of serious physical injury."); *Avent v. Fisher*, No. 9:07-CV-1135 (DNH)(GHL), 2008 WL 5000041, at *3 (N.D.N.Y. Nov. 20, 2008).

[23]*See e.g.*, *Fuller*, 288 Fed. App'x at 511.

[24]*Hafed*, 635 F.3d at 1180 (citing *White v. Colorado*, 157 F.3d 1226, 1232 (10th Cir. 1998)).

[25]*White*, 157 F.3d at 1231 (finding vague allegations of harm, nonspecific references to injury, and utterly conclusory assertions are insufficient); *Fuller*, 288 Fed. App'x at 510.

[26]*See Merriweather*, 586 F. Supp. 2d at 552; *Skillern v. Jackson*, No. CV606-49, 2006 WL 1687752, at *2 (S.D. Ga. 2006) (rejecting allegation that denial of access to courts would constitute imminent danger).

"imminent danger" under § 1915(g).[27]  Furthermore, contesting one's conviction does not evince imminent danger.[28]  Likewise, allegations of improper prosecution or inmate classification are "too attenuated from alleged imminent danger for that danger to be fairly traced back to asserted wrongs."[29]  On the other hand, "credible, uncontroverted allegations of physical threats and attacks" are clearly sufficient.[30]  Imminent risk of assault, such as the allegation that defendants have placed plaintiff near known enemies, is also clearly sufficient.

With regard to assertions of denial of medical treatment, the court reiterates that vague and conclusory allegations are insufficient to satisfy the imminent danger standard.[31]  The plaintiff must describe his serious physical injury and allege when he asked for medical assistance, what kind of treatment he requested, what person he directed his request to, and what person denied it.[32]  Moreover, even specific examples of being denied health care in the past are not sufficient to satisfy the imminent danger exception under § 1915(g).[33]  Nor is an allegation of "an ongoing pattern of retaliation" by denying treatment and medication enough without a

---

[27]*Polanco v. Hopkins*,  510 F.3d 152, 155 (2d Cir. 2007).

[28]*See Ciarpaglini*, 352 F.3d at 331 (citing *Heimermann v. Litscher*, 337 F.3d 781, 782 (7th Cir. 2003)).

[29]*See Pettus v. Morgenthau*, 554 F.3d 293 (2d Cir. 2009).

[30]*Hafed*, 635 F.3d at 1180 (citing *White*, 157 F.3d at 1232.).

[31]*See White*, 157 F.3d at 1231.

[32]In *White*, the Tenth Circuit found that the plaintiff's filings contained "no specific reference to which of the defendants may have denied him medication or treatment for what ailment on what occasion," nor "ever specif[y] the general nature of the 'serious physical injury' he asserts is imminent."  *Id.*  The defendant's allegations in *White* were similar to plaintiff's herein.  For example, in *White* the defendant alleged that he was, "deprived of life sustaining medication and medical attention/treatment, ha[s] been beaten, and/or otherwise tortured and allowed to suffer great pain, so that [his] health degenerated to a[n] extremely life-threatening degree . . . ."  *Id.* at 1231-32.

[33]*See Reeves v. Peters*, No. 09-10322, 2009 WL 1930043, at *5 (E.D. Mich. July 2, 2009) (unpublished).

showing that this presents an imminent danger of serious physical injury.[34]  However, specific claims of lack of treatment for Hepatitis C and lack of facilities to treat a serious dental infection have been held to pose the risk of  imminent danger.[35]

Congress has provided that "no federal civil action may be brought by a prisoner . . . for mental or emotional injury suffered while in custody without a prior showing of physical injury."[36]  This distinction between claims of mental or emotional injury that are conjoined with physical injury and those that are not, suggests that allegations of mental or emotional injury are not sufficient by themselves to qualify a plaintiff for the exception.  It has been specifically held that allegations of constant stress, hypertension, depression, mental anguish, and sleep disorders are insufficient unless the prisoner explains how the conditions alleged in the complaint will imminently produce these injuries and how they are seriously dangerous.[37]

The three-striker's allegations of imminent physical danger must be plausible and credible.[38]  "[I]t has never been the rule that courts must blindly accept a prisoner's allegations of imminent danger."[39]  To this end, a court may take judicial notice of facts from court records involving the frequent filer.  For example, the court may refer to medical records indicating that

---

[34]*Id.*

[35]*See Ibrahim*, 463 F.3d at 3; *McAlphin v. Toney*, 281 F.3d 709, 711 (8th Cir. 2002).

[36]*See* 42 U.S.C. § 1997e(e).

[37]*See Burghart v. Corr. Corp. of Am.*, 350 Fed. App'x 278, 280 (10th Cir. 2009) (unpublished); *Cardona v. Bledsoe*, No. 3:CV-11-0054, 2011 WL 1832777, at *5 (M.D. Pa. May 12, 2011) (holding that there is no exception to the three strikes rule based upon a showing of an imminent danger of a serious psychological injury.).

[38]*See Mathis v. Smith*, 181 Fed. App'x 808, 809-10 (11th Cir. 2006) (unpublished) (affirming rejection on credibility grounds of claim of ongoing threats by guard because of prisoner's prior false representations, history of frivolous litigation, and unrelated allegations in his complaint); *Nelson*, 2008 WL 3836287, at *5 ("The imminent danger claimed by the inmate . . . must be real, and not merely speculative or hypothetical.").

[39]*Taylor v. Watkins*, 623 F.3d 483, 485 (7th Cir. 2010).

the prisoner claiming imminent danger from denial of medical care was actually provided adequate care and find that his allegations are simply not credible.[40]  Certainly, if a responding defendant challenges plaintiff's allegations of imminent harm, a hearing of limited scope is one proper way to resolve the issue.[41]  In this Circuit, the Martinez Report is another means whereby the court directs officials of the Kansas Department of Corrections to undertake an investigation and submit a report on conditions claims like that of imminent danger.  The district court has discretion to grant or deny the IFP motion based upon its determination of the sufficiency and plausibility of the fact allegations in the supporting affidavits in light of the inmate's litigation history.  It logically follows that the district court may sua sponte question the "imminent danger" assertion.[42]

## II.   DISCUSSION

The Court has carefully reviewed plaintiff's Motion for IFP, Request for "Imminent Danger" Exception (Doc. 2), and his Affidavit in support (Doc. 3) for specific allegations of imminent danger.  Plaintiff alleges in his motion that he has long been and will continue to be held in segregation unless he has access to overturn his "unconstitutional convictions for rules violations,"[43] and makes many other claims regarding court access.  In his Affidavit, he

---

[40]*See White*, 157 F.3d at 1232.

[41]*See Taylor*, 623 F.3d at 486.

[42]*See Strope*, 2011 WL 3455827 at *1 ("Although § 1915(g) is not jurisdictional, we may raise the issue of strikes sua sponte.").

[43]Plaintiff baldly states that all the 297 disciplinary reports he has incurred since August 1997 could be overturned but for defendants' denial of access.  KDOC records available on-line show that most of plaintiff's DRs are for threats and intimidation, disobeying orders, and insubordination/disrespect.  Twelve are for battery or assault.  His exceptionally lengthy record of prison misconduct plainly indicates that his continued assignment to administrative segregation has a rational basis.

complains that he is being denied writing and mailing materials beyond the normal indigent allowance, which has been a main premise of his repetitive denial of access claims. These allegations do not show imminent danger of any type of physical injury.

Plaintiff's allegations of "horrendously criminal abuses and conditions" that are "dramatically affecting" his "physical and M/H health" are vague and conclusory and therefore insufficient to show imminent physical danger. The same is true of his allegations that every day he has "suffered actual and irreparable injuries" and "extreme pain and suffering," and that his "physical and mental health" have "deteriorated." Plaintiff also clearly fails to offer any specific allegations of imminent danger that have arisen from prison officials' alleged threats and retaliations.[44] His allegations of past acts of physical harassment are neither sufficiently specific nor related so as to support an inference of an ongoing danger.

Plaintiff attaches the affidavit of another inmate to his own. The inmate affiant states that on March 24, 2011, he observed plaintiff, who was in an adjacent cell, ask Unit Manager Walmsley through the "window shutter" if he were aware of a federal judge's order regarding the investigation of criminal abuses by prison officials upon plaintiff. The inmate heard Walmsley "sarcastically" respond, "Are you so naive to think anybody is going to investigate us or do anything to us over you." As noted, allegations of verbal harassment do not show imminent physical danger.[45] The inmate affiant's other statements of overhearing Walmsley remark that plaintiff's window shutter would remain closed until he left EDCF, that Lynn would

---

[44]*See Davis v. Rice*, 299 Fed. App'x 834, 836 (10th Cir. 2008).

[45]Verbal harassment unaccompanied by any injury, "no matter how inappropriate, unprofessional, or reprehensible it might seem," does not constitute the violation of any federally protected right and therefore is not actionable under § 1983. *See Merriweather*, 586 F. Supp. 2d at 557.

be gone in six weeks, and that Lynn should take up any complaints with his team do not show

that Mr. Lynn was in imminent danger of any serious physical injury.

The Court has no difficulty concluding that plaintiff's allegations in the filings connected

with his IFP motion are inadequate to show that he was in imminent danger of serious physical

injury at the time he filed the instant Complaint.  In his motion and Affidavit, plaintiff does not

directly point to his Complaint as the source of his showing of imminent danger.  Nevertheless,

the Court has also undertaken a paragraph by paragraph analysis of the Complaint to discern

whether or not plaintiff's allegations in this document show that he is in imminent danger of

serious physical injury.

The Complaint consists of nine pages.  The first three pages contain the caption with the

numerous defendants' names and the list of parties.  The preliminary statement that is begun on

page 1 and completed on page 2 contains nothing but conclusory allegations.  No fact allegations

showing physical danger are on these pages.  On page 4, plaintiff begins his "Notice Pleading

Facts," which he alleges in 25 numbered paragraphs.[46]

Paragraph 1 contains no facts showing imminent danger of serious physical harm.

Plaintiff states that he "invokes the continuing constitutional torts doctrine."  However, he

presents neither facts nor legal authority to support this invocation.  The Tenth Circuit has

repeatedly avoided applying this doctrine except in Title VII employment discrimination cases,

---

[46]If this format sounds organized, plaintiff's thoughts and allegations are not.  The Complaint is not upon forms provided by the court and is thus, technically in violation of the local rule.  Plaintiff does not state separate claims as numbered grounds and then allege relevant supporting facts under each ground.  In addition, his supporting facts fail to include a description of each defendant's acts or inactions that amounted to personal participation in the asserted constitutional claim.

and has specifically declined to apply it to § 1983 prison conditions cases.[47]

Plaintiff also states that he "incorporates" into this complaint, his "constitutional violation claims" from three prior lawsuits.[48]  Plaintiff's filings in prior cases are not incorporated into this action by this blanket statement.  Plaintiff has been informed in other cases that if he wants to raise any claims, allege any facts, or present any arguments, whether or not from his prior cases, he must actually include them in his complaint.  He has also been informed that in order to add any claim, allegation, or argument that is not in the complaint as filed, he must submit a proper amendment or supplement.  It is not the Court's responsibility to cull Mr. Lynn's prior closed cases in search of factual support for either his claim of imminent danger of serious physical injury or any other claims in this complaint.[49]  The Court takes judicial notice of court records demonstrating that Mr. Lynn's statements that he is unable to reproduce or present allegations from his prior cases due to the limits on his indigent writing materials and postage and other alleged access denials are not credible.[50]

---

[47]See e.g., Burkley v. Corr. Health Care Mgmt. of Okla., Inc., 141 Fed. App'x 714 (10th Cir. 2005) (unpublished); Fogle v. Slack, 419 Fed. App'x 860, 864 (10th Cir. 2011) (unpublished).

[48]Lynn v. Anderson-Varella, No. 06-3172-SAC, 2008 WL 2397554 (D. Kan. Jan. 26, 2007) (dismissing for failure to state a claim upon which relief can be granted citing 28 U.S.C. §1915(A)(b) and 42 U.S.C. §1997e(c)(1)), aff'd, 257 Fed. App'x 80 (10th Cir. 2007) (unpublished) (finding no merit to Mr. Lynn's arguments and affirming for substantially the same reasons stated in District Court's Orders.); Lynn v. Werholtz, No. 10-3142-SAC, slip op.  (D. Kan. Oct. 19, 2010) (dismissing pursuant to 28 U.S.C. § 1915(g) based on no allegation of imminent danger of serious physical injury and for failure to pay the filing fee; no appeal filed.); Lynn v. Cline, No. 10-mc-302-SAC, slip op.  (D. Kan. Jan. 6, 2011) (dismissing as without jurisdictional basis).  Mr. Lynn may not relitigate claims from prior cases by simply "incorporating these cases" into this action.

[49]Mr. Lynn has been a party in 27 cases filed in federal court, and has filed numerous state court actions as well. He has filed voluminous materials in some of his other cases.

[50]It was found in Mr. Lynn's prior cases that if he were not a vexatious litigant, the indigent writing and mailing materials provided would be adequate for him as they are for other indigent inmates.  He cannot squander the resources made available to him by continuously submitting frivolous and vexatious court pleadings, grievances, and requests to various officials and then complain that he is not provided sufficient free resources.  He indicates that he might obtain funds from his family, but only if the court will condition the use of those funds as he sees fit.  In Anderson-Varella, the Tenth Circuit considered Lynn's allegations that "he was unable to comply with the district court's order to file an

In paragraph 2, plaintiff alleges an "ongoing pattern" of "criminal abuses" which he claims violate state and federal criminal laws and his constitutional rights and continue to cause physical injuries as well as injury to his court access.  These generalized allegations are completely conclusory, and therefore "insufficient to connect the separate incidents mentioned into a pattern of threats of serious physical injury that are ongoing."[51]

In paragraph 3, plaintiff alleges that "beginning in 2008" he was "subjected to a series of retaliations orchestrated by defendant Hoshaw" as a result of "pending and intended litigation in the Shawnee Co. Dist. Ct. involving (Hoshaw) and other state officials" and legislative claims and grievances, and that he was subjected to "conditions of confinement" that "affected (his) physical & M/H."  These allegations are conclusory and do not show that plaintiff was in imminent physical danger at the time he filed this complaint.

In paragraph 3, plaintiff also alleges "denial of a cell w/a mirror, desk, chair, towel rack, bed surface," on/off light switch (light left on 24 hrs.), and cell window, and confinement in mice-infested "box cells" without ventilation or emergency call box.  He also alleges denials of meals, "outside recreation/fresh air" for many months, and "food pass slamming."  In addition, plaintiff complains of slip and fall hazards, including a shower stall inside his cell that flooded during use and caused him "serious slips and falls, buttbone injuries."  He also alleges that "each of these cells" has a backdoor with no weatherstripping, which results in the cell flooding during

---

amended complaint because of the restrictions of which he complains" and that the restrictions precluded him from presenting his issues.  The Circuit Court aptly observed: "These contentions are completely undermined by the volume of material he filed in the district court, the thirty-five page brief he submitted on appeal, and additional arguments he makes in motions filed with this court." *Anderson-Varella*, 257 Fed. App'x at 86.  Mr. Lynn has filed three cases in this court within the past year, and has managed to file numerous pleadings in each of those cases, as well as send written correspondence directly to judges.

[51]*See Davis*, 299 Fed. App'x at 836.

rain.  Plaintiff further alleges that the "slamcells" and "other seg. cells at HCF" have painted floors that are slippery, and have "caused (him) extreme injury/hyperextended knee pain that persists 6 mos. later," and to require a wheelchair for 3 weeks as well as a "permanent knee sleevebrace."  Plaintiff generally alleges that these cells are "used for longterm confinement" as retaliation and punishment.   Plaintiff does not provide the location along with the relevant dates to show duration of his exposure to any of these conditions.  Nor does he explain how at the time he filed this Complaint he was in imminent danger of serious physical injury as a result of these conditions.  Plaintiff's allegations of continuous light, mice infestation, denial of "outside recreation/fresh air," and frequent flooding and floor surface hazards, if they included dates, participants and locations, would call for a responsive pleading.  However, they are evidence of imminent danger of serious physical injury only if they are shown to have presented such a danger to plaintiff at the time he filed this Complaint.

Plaintiff alleges "threats of physical attack in restraints," loss of two teeth from "the vicious beat down of 10-9-09," being held in a "restraint chair for over 26 hrs. as punishment," and "conspiratorial abuses," which "included a half dozen batteries w/ excessive and unnecessary" force while "restrained & compliant."  However, these allegations again do not include dates, locations, and names of participants.  In addition, they reflect past misconduct rather than imminent danger.  The single dated incident occurred over a year before the filing of this complaint and thus does not show imminence.  Plaintiff's allegations seeking redress for past harms do not satisfy the imminent danger of serious physical injury exception.

Plaintiff's conclusory allegations that disciplinary reports have been perjured and that he has been denied constitutional rights in disciplinary proceedings do not show danger of physical

injury.  Mr. Lynn also alleges that he was subjected to a "prison rotation transfer scheme."

However, he alleges no facts indicating that this "scheme" placed him in imminent physical

danger, and quite the opposite might be assumed.

In addition, plaintiff alleges denials of medications for his high blood pressure condition

diagnosed in May 2009; and denial of psychological services and medications for his

"claustrophobic panic and anxiety attacks."  No dates, location, participants or other background

facts are provided.  Nor does plaintiff describe any resulting physical injury that was imminent

upon the filing of this complaint.  These conclusory allegations are insufficient under *White*,

particularly in light of plaintiff's allegations elsewhere in his Complaint that he has been

provided treatment.

In paragraph (4), plaintiff's allegations of taunts and threats by defendant Hoshaw evince

no danger of physical injury.  Plaintiff's allegations that he was confined in a "closed shudder

cell," which he describes as a "windowless cell like a closet," from January to May, 2010, do not

show danger that was imminent when this Complaint was filed.  While he certainly may seek

damages in a complaint for past injuries from unconstitutional conditions, these particular

allegations do not entitle him to do so IFP.

In paragraph (5), plaintiff alleges that he was returned to EDCF on January 6, 2011, and

again confined in the windowless cell until January 28, 2011, when Dr. Zaylor "allegedly stated

'you cannot confine anyone in a cell like this, it is inhumane.'"  He also alleges that he was

"thereafter confined in a regular cell w/a back wall window slat to see outside sky and prison

yard."  The Court reiterates that plaintiff may properly sue based upon past wrongs, but such

allegations do not show that serious physical injury was imminent in late March or early April,

15

2011.

In paragraph (6), plaintiff alleges that on February 13, 2011, he filed a "grievance or lawsuit" against SST Maddox. He further alleges that later the same day he was attacked with excessive force while nude and on the floor face down, and was viciously kneed in the mouth causing his dental bridge to break. He also alleges that he was given a "perjurous [sic] D/R" by Maddox who has a history of using excessive force and writing perjured, retaliatory DRs." In addition, he alleges that Maddox cut off and destroyed plaintiff's leg brace, and that neither the medical provider nor prison officials will replace it. Plaintiff does not indicate that this DR was dismissed on these grounds. Again, plaintiff complains of a past harm and alleges no facts showing ongoing imminent danger.

Also in this paragraph, plaintiff alleges that he has been "continuously deprived of emergency and regular dental and medical care." However, he qualifies this deprivation by adding, "unless (he) hobble(s) a ½ mile in legirons" and waist restraints accompanied by guards, despite his "repeated protests that (he) can't walk 20 ft. w/out great knee pain." Plaintiff's own allegations indicate that he is able to obtain medical and dental care if he complies with security measures. He does not allege that he is under any medically prescribed restrictions with regard to his knee or walking.

In paragraph (7) plaintiff's allegations of mail mishandling and insufficient indigent provisions do not evince any physical injury. The same is true of plaintiff's claims in paragraph (8) of denial of access to prosecute his lawsuit in Shawnee County District Court and that court's restrictions that he may proceed there only with counsel.[52]

---

[52]Plaintiff does not incorporate his state case, No. 09-C-106,7 into this action by citing it in this paragraph.

In paragraph (9), plaintiff claims that prison officials are "abusing the KDOC 'MRA' policy" by using it as corporal punishment against him.  This claim is completely conclusory.

In paragraph (10), plaintiff alleges that on March 24, 2011, defendant Walmsley told him "the shudder will remain closed" until plaintiff leaves or suffers a breakdown and is readmitted to Larned.  Verbal exchanges, even threatening ones, do not evince serious physical danger.  Plaintiff does not allege the dates or duration of, or describe the danger that arises from, the conditions of his confinement in a closed shuttered cell.  Furthermore, plaintiff's hundreds of incidents of prison misconduct and his allegations elsewhere that he recently threw a substance on a correctional officer signal that legitimate security reasons may exist for closing his cell shutter.

In paragraph (11), plaintiff claims that he is subjected to cruel and unusual punishment and danger of infection with MRSA or other fatal disease.  As factual support he alleges that the "laundry porter" who makes up clean laundry rolls for his cellhouse, "boasts" that he is "wiping his testicles and buttcrack/anus" on Lynn's shirt collars and towels.  These allegations, taken as true, show nothing more than verbal harassment by another inmate.  His allegations that "EDCF staff hierarchy" are ignoring Lynn's complaints and encouraging this inmate's conduct are completely conclusory.

In paragraph (12), plaintiff alleges that he is being denied his personal and legal materials, including a Clemency Petition.  Denial of access claims are not allegations of physical danger.  In paragraph (13), plaintiff claims denial of telephone access to his appointed attorney in a new criminal case and to his family.  Denial of phone privileges do not evince imminent physical danger.

In paragraph (14), plaintiff alleges that he has been in segregation continuously since August 1, 2000, and makes the conclusory statement that he has had sham reviews. In the same paragraph he alleges that the "prison rotation transfer scheme" was enacted on April 1, 2009, and suggests it has "generated" his "over 200 D/R convictions." Plaintiff does not allege a specific, credible claim of physical danger from the fact of extended segregation alone. As noted, it plainly appears that he is in segregation due to his own continued misconduct, which was presumably established in nearly 300 disciplinary proceedings that have not been overturned.

Plaintiff's allegations in paragraphs (15) and (16), that defendants Judge Crow, U.S. Attorney Grissom, Governor Brownback, and "prison officials" are conspiring to confine him under unconstitutional conditions in order to cause him to have a heart attack or mental breakdown are supported by no factual allegations whatsoever.

In paragraph (17), plaintiff's allegations that "CCS defendants" have failed to take steps to end his confinement in the "closed shudder cell," which they agree is cruel and unusual, are nothing but conclusory statements. Moreover, in light of his earlier allegation that he was moved to a cell with a window, imminence is not shown.

In paragraph (18), plaintiff's allegations of denial of legal materials evince no physical danger. His allegation that he is confined in a "closed shutter cell" with no description of consequential danger does not satisfy the exception. His main objection seems to be his inability to see outside the cell, but he does not specify "the general nature of the 'serious physical injury' he asserts is imminent" from this lack of visibility.

In paragraph (19), plaintiff claims that due to denial of access by prison officials, he is unable to seek any court remedy except through other inmates, which forces him to violate

prison rules.  This access claim again fails to identify a "physical" injury or one that is imminent. In the same paragraph, plaintiff alleges that he is "overwhelmed w/despair & massive clinical depression" and that the abuses "are hastening (his) death or permanent irreparable injuries." These allegations are completely conclusory.

In paragraph (20), plaintiff argues that the judge must see the "closed shudder cell," his medical and mental health records, and talk to security and mental health staff in order to "be able to fully appreciate the legitimate imminent danger of serious harm" he is experiencing. These statements at most suggest plaintiff believes there is evidence that he has not presented to this court.  These allegations are not themselves evidence of physical danger.  Plaintiff's allegations that his "disorientation issues" prevent him from adequately presenting his claims in this complaint and from describing the personal participation of each defendant are completely conclusory.  His repeated allegations that limits on writing materials and postage are preventing him from presenting his claims and alleging personal participation show no physical danger.

In paragraph (21), plaintiff alleges that a state judge has ignored his letters seeking permission to submit his 16-page state habeas petition regarding his conditions and abuse claims, and that the judge is in collusion with prison officials to deny him court access.  These allegations do not show that plaintiff is in imminent danger of serious physical injury.

Paragraph (22) is nothing more than a bald statement that all defendants participated in the claimed abuses.

In paragraph (23), plaintiff alleges that he discovered in February 2010 that the Clemency Application he submitted to defendants Hoshaw and Shidler in March 2009, was destroyed by them to obstruct justice and retaliate against him for his First Amendment activities.  These

allegations may support a claim of past harm, but do not show imminent physical danger.

Plaintiff's claims in paragraph (24) of confiscation in 2009 of his color tv and missing property documents, allegedly in retaliation, also show neither physical nor imminent danger.

In paragraph (25), plaintiff's complaints regarding grievances and administrative appeals show no danger of physical injury.

Plaintiff's prayers for relief are listed in ten paragraphs. No showing of imminent danger of serious physical injury is found therein.

Plaintiff's allegations of violation of his constitutional right to "atty-client consultations and the effective assistance of counsel in a criminal case," his provable innocence, and other allegations that might be read as challenges to his criminal conviction do not show imminent danger of serious physical injury.

In his Complaint, plaintiff again asks the court to note his pleadings filed in two prior federal cases, and refers to nothing other than the dates of filing. He alleges that these cases "detail (he is) under threat of imminent danger of serious physical injury." The Court repeats that allegations in Mr. Lynn's prior cases are not incorporated into this case in this cursory manner.[53] As explained earlier, this Court is not obliged to parse all the pleadings filed in prior closed cases by a vexatious three-strikes litigant to determine if he has elsewhere stated facts showing that he is under imminent danger of serious physical injury at the time of the filing of the complaint in this new case. Plaintiff more specifically refers to his "pleas for 'imminent danger' exceptions filed on 2/3/11 in #10-3142," and the court has located a post-judgment motion filed in another recent action by Mr. Lynn. On that motion, Judge Crow ruled as follows:

---

[53]Moreover, no pleadings were filed in either case on the dates provided, and both cases were dismissed prior to these dates.

Plaintiff's allegations regarding his confinement in "the shudder cells at EDCF" . . . are too conclusory to establish that he was in serious physical danger at the time he filed this complaint. In order for Mr. Lynn to have established that he was under imminent danger of serious physical injury, he must have provided dates and described the general nature of the physical danger he faced as well as the involvement of specific defendants at the time he filed this complaint. See White v. Colorado, 157 F.3d 1226, 1231 (10th Cir. 1998). Mr. Lynn's own allegations indicate he is regularly rotated to different prisons and is often housed in the infirmary. Thus, if EDCF is the only prison with "shudder cells" as he alleges, then he is not continuously confined in a "shudder cell." Moreover, Mr. Lynn alleged in his most recent case that he is in a cell with a window on the back wall. Plaintiff's general claims of continual conditions are often disaffirmed by his own more specific allegations. Furthermore, his own allegations, which KDOC on-line records confirm, are that he faces years of confinement in disciplinary segregation as a result of his convictions of 200 to 300 disciplinary infractions. It follows that his detention in segregation under spare and discomforting conditions can hardly be considered an unexpected incident of his confinement or as without rational basis. In brief, plaintiff's affidavit does not establish that this court erred when it held that his complaint failed to show he was in imminent danger of serious physical injury at the time he filed this action. The court concludes that plaintiff does not state grounds under Rule 60(b) that would entitle him to relief from the judgment entered in this case.

The undersigned judge point outs that some of plaintiff's allegations in his post-judgment motion regarding conditions of his confinement are disturbing, in that they could be viewed as pleading a claim of cruel and unusual punishment had plaintiff alleged additional facts including those regarding their duration. However, in order to qualify a three-strikes litigant for IFP status, even claims of cruel and unusual punishment must be coupled with facts showing that actual, serious, physical danger from those conditions is imminent at the time the complaint is filed. For example, claims of cruel and unusual conditions in the past do not show imminent physical danger.

The court strongly urges Mr. Lynn that if he has additional dates, circumstances, and other facts which, together with those alleged in his post-judgment motions, could amount to a showing that he is

21

under imminent danger of serious physical injury, then he should immediately present all such allegations in his only pending case, Lynn v. Roberts, Case No. 11–3073, in which he challenges the same conditions of confinement and has a motion to proceed IFP that is currently under consideration.[54]

Despite this clear admonition by Judge Crow, nothing additional has been submitted in this case since that order was entered.

Mr. Lynn makes many "formulaic" allegations of imminent danger in his Complaint, which are reminiscent of claims in his past repetitive litigation that led to his designation as a three-striker. His allegations are not grounded in specific facts which indicate ongoing serious physical injury, or a pattern of misconduct evidencing the likelihood of imminent serious physical injury at the time this complaint was filed. Plaintiff does not specify which defendants were exposing him to "imminent danger of serious physical injury" at the time of filing, the manner in which these individuals caused his exposure to such danger, and the specific dates on which he was subjected to physical danger.[55] He does not specifically show how any previous incidents evidence a present threat of serious injury to him. Even if plaintiff can prove he was exposed to a serious injury or threat of injury in the past, such proof is not sufficient to meet the imminent danger exception.[56] This court concludes that Mr. Lynn's allegations in all pleadings filed herein thus far do not meet the imminent danger of serious physical injury exception of § 1915(g).

---

[54]*Lynn v. Werholtz*, No. 10-3142-SAC, 2011 WL 2112476, at *2-*3 (D. Kan. May 26, 2011).

[55]*See id.*; *see also Welch v. Galie*, 207 F.3d 130 (2d Cir. 2000) (finding that conclusory allegations that defendants were part of a conspiracy and were physically harming plaintiff did not bring plaintiff within imminent danger exception).

[56]See *Medberry*, 185 F.3d at 1193.

Plaintiff is given one more opportunity, after being advised of the foregoing standards and the proper process, to submit an affidavit in support of his IFP motion.  This affidavit must be limited to specific factual allegations showing that he was in imminent danger of serious physical injury at the time he filed this complaint.  If plaintiff fails to present sufficient specific facts within the time allotted, his motion shall be denied.  No other motion will be entertained in this case until the fee issues are resolved.  Mr. Lynn is forewarned that should his IFP motion be granted, his claims will not be considered further unless he submits a properly and fully completed "Amended Complaint" upon court-provided forms.  If he refuses to abide by the local court rule and submit his claims upon the proper forms, this action may be dismissed without further notice.[57]

Mr. Lynn is directed to send all materials pertaining to this case to the Office of the Clerk.

IT IS THEREFORE BY THE COURT ORDERED that plaintiff is granted **twenty (20) days in which to submit an affidavit in support of his IFP motion that complies with the foregoing Memorandum and Order, and to submit his complaint upon court-approved forms that have been fully and properly completed.**

IT IS FURTHER ORDERED that plaintiff's Motion for Referral to Chief Judge Vratil and for Urgent Orders (Doc. 7) is **denied**.[58]

---

[57]*See Young v. United States*, 316 Fed. App'x 764 (10th Cir. 2009) (unpublished); *Georgacarakos v. Watts*, 368 Fed. App'x 917 (10th Cir. 2010) (unpublished); (holding Fed .R. Civ. P.  83(a)(2) allows a district court to enforce a local rule imposing a form requirement unless it "causes a party to lose any right because of a nonwillful failure to comply."); Fed. R. Civ. P. 41(b).

[58]As Judge Crow found in an Order previously entered in this case, the "assignment of cases is a matter within the discretion of the Chief Judge of this District," and there is "no legal authority for plaintiff to direct (the referral of this case) to a particular judge."  Plaintiff's objection to the initial assignment of this case to Judge Crow was rendered moot by its transfer to the undersigned judge.

The Clerk is directed to transmit § 1983 forms to plaintiff.

**IT IS SO ORDERED**.

Dated: August 22, 2011

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE